Tagged



**ORDERED in the Southern District of Florida on February 10, 2010.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

In re:

JSL Chemical Corp.,

    Debtor.            /

Chapter 7 Case
Case No. 07-16145-BKC-PGH

Deborah C. Menotte, Trustee

    Plaintiff,

v.

Oxyde Chemicals, Inc.

    Defendant.      /

Adv. Pro.09-1615-PGH

**MEMORANDUM ORDER: 1) GRANTING IN PART TRUSTEE'S MOTION FOR SUMMARY JUDGMENT; AND 2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**This matter** came before the Court upon Deborah C. Menotte, the Chapter 7 Trustee's, ("Trustee") *Dispositive Motion for Summary Judgment* ("Trustee's Motion"), and Oxyde Chemicals, Inc.'s ("Defendant") *Motion for Summary Judgment* ("Defendant's Motion"). The parties filed a Joint Stipulation of Facts, as well as responses and replies to each other's motions.

**STATEMENT OF FACTS**

JSL Chemical, Corp., ("JSL" or "Debtor"), who was in the chemical supply business, filed for relief under Chapter 7 of the Bankruptcy Code on August 2, 2007 ("Petition Date"). The Defendant supplied chemicals to the Debtor. The Debtor and the Defendant's business relationship began in January, 2004. During the course of their relationship, the Defendant issued thirty invoices to the Debtor. Of these invoices, twenty-seven were paid during the pre-preference period, one was paid during the preference period, and two remained unpaid as of the Petition Date. Although the Defendant extended credit to the Debtor on payment terms of net 30 days, the Debtor rarely paid the Defendant within 30 days of invoice.

On June 9, 2009, the Trustee initiated this adversary proceeding by filing a *Complaint to Avoid and Recover Preferential Transfers Pursuant to 11 U.S.C. § 547 and 11 U.S.C. § 550* ("Complaint"). The Trustee's Complaint seeks to avoid and recover an alleged preferential payment of $79,343.35 made by the Debtor to the Defendant ("Payment"). The Payment was made by check dated May 10, 2007 for full payment on account of an invoice dated March 13, 2007. The Defendant received the $79,343.35 Payment while $112,907.15 was outstanding from the Debtor. The $112,907.15 payable owed to the Defendant was comprised of three invoices: 1) the March 13, 2007 invoice for

$79,343.35, 2) another March 13, 2007 invoice for $16,185.40, and 3) a March 16, 2007 invoice for $17,378.40. By virtue of the alleged preferential Payment, the Defendant received approximately 70% of what it was owed by the Debtor. It is undisputed that the Defendant's receipt of this Payment enabled the Defendant to receive more than it would have in this Chapter 7 case had it not received these funds.

There is also no dispute that the Defendant was a diligent creditor who would often inquire as to the status of payments and request prompt remittance when payments were late. On October 11, 2006, Steve Stone, the Defendant's Chief Financial Officer, sent an email to John Lagae, the Debtor's President, stating that in order to maintain a credit line with the Defendant and not be placed on prepaid credit status, checks for outstanding invoices would have to arrive the following morning. On April 29, 2007, Mr. Stone sent an email to Mr. Lagae which stated that the Defendant was placing the Debtor on "credit hold" until it received a response to its inquiry concerning outstanding invoices totaling approximately $112,000.00.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### I.   *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Rice v. Braniger Org., Inc.*, 922 F.2d 788 (11th Cir. 1991); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987); *In re Pierre*, 198 B.R. 389 (Bankr. S.D. Fla. 1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *See United States v. Feinstein*, 717 F. Supp. 1552 (S.D. Fla. 1989).

In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987) (*citing*

*Anderson*, 477 U.S. at 248). "Summary judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broad. Co.*, 844 F.2d 988, 992 (2d Cir. 1988).

The Trustee's Motion seeks to avoid and recover the alleged preference Payment. The Defendant asserts that the Trustee may not avoid the Payment because it was made in the parties' ordinary course of business. Alternatively, if the Court finds that the Payment was not made in the ordinary course of business, the Defendant seeks set off for two unpaid invoices in the amount of $33,563.80. "The 'ordinary course' determination requires, of course, a 'peculiarly factual analysis.'" *In re CCG 1355, Inc.*, 276 B.R. 377, 383 (Bankr. D.N.J. 2002). Nevertheless, the parties' Joint Stipulation provides the necessary material facts to adjudicate this matter. The parties' dispute centers not on the facts themselves, but rather on the interpretation of the facts under the law, such that summary disposition of this matter is appropriate. As discussed below, the Court finds the Trustee is entitled to summary judgment as a matter of law.

## II.  § 547 Preferences

### A.    § 547(b)

The Trustee's power to avoid preferences is designed to "discourage creditors from 'racing to the courthouse to dismember

the debtor during his slide into bankruptcy,' and to 'facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor.'" *In re Issac Leaseco, Inc.*, 389 F.3d 1205, 1209 (11th Cir. 2004)(*quoting Union Bank v. Wolas,* 502 U.S. 151, 161 (1991)). A creditor who receives "a greater payment than others of his class must disgorge so that all creditors may share equally." *Id*.

To effect this policy, § 547(b) permits the Trustee to "'avoid any transfer of the interest of the Debtor in property' if five conditions are met." *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). The Trustee must show that the payment was 1) to the creditor, 2) on account of a previous debt, 3) made while the debtor was insolvent, 4) made ninety days before the bankruptcy petition was filed, and 5) was effective in enabling the creditor to receive more than it would have received in a Chapter 7 distribution. *Id.* (*citing* 11 U.S.C. § 547(b)); *Kapila v Media Buying Inc. (In re AMERI P.O.S., Inc.)*, 355 B.R. 876, 881-882 (Bankr. S.D. Fla. 2006).

The parties do not dispute that the Defendant was a creditor of the Debtor, that the Payment was made on account of a previous debt within 90 days of the Petition Date, and that it enabled the Defendant to receive more than it would otherwise have received through a Chapter 7 distribution in this case. The Defendant also made no attempt to rebut the § 547(f) presumption that the

6

Debtor was insolvent during the 90 day pre-petition period. Thus, the Court concludes that § 547(b)'s elements are satisfied and the Payment was indeed a preference. Consequently, the Trustee can avoid the Payment unless the Defendant shows, by a preponderance of evidence, that the Payment falls under one of the exceptions stated in § 547(c). *Ellenberg v. Tulip Prod. Polymerics, Inc. (In re T.B. Home Sewing Ent., Inc.)*, 173 B.R. 782, 787 (Bankr. N.D. Ga. 1993). The Defendant argues that the Payment may not be avoided because it was made in the ordinary course of business pursuant to § 547(c)(2)(A). The Trustee maintains that the Payment is outside the ordinary course of business because it was paid later than payments made during the pre-preference period, and because the Debtor made the Payment in response to unusual collection activity.

**B.    *§ 547(c) Ordinary Course of Business***

The purpose of the ordinary course of business defense "is to leave undisturbed normal financial relations, because [such an exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy." *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563, 1566 (11th Cir. 1986)(alterations in original) (*quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 373-74 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 6329). Stated

another way, the ordinary course of business exception aims to protect the normal, ordinary relationship between debtors and creditors in recurring credit transactions. *In re Moltech Power Sys., Inc.*, 327 B.R. 675, 679 (Bankr. N.D. Fla. 2005)(citations omitted). The ordinary course inquiry is subjective "insofar as it requires courts to consider whether the transfer was ordinary in relation to the 'other business dealings between *that* creditor and *that* debtor.'" *Globe Mfg*, 567 F.3d at 1298 (emphasis in original) (*quoting In re Fred Hawes Org., Inc.*, 957 F.2d 239, 244 (6th Cir. 1992)).[1]

In determining whether transfers are protected from avoidance based upon the ordinary course of business, courts consider: 1) the prior course of dealings between the parties; 2) the amount of the payments; 3) the timing of the payments; and 4) the circumstances surrounding the payments. *Jensen v. Raymond Bldg. Supply Corp. (In re Homes of Port Charlotte Florida, Inc.)*, 109 B.R. 489, 491 (Bankr. M.D. Fla. 1990). Under this test, the parties' transactions during the pre-preference period are examined to determine the parties' ordinary course of business. Transactions occurring during the preference period are then compared to the parties' pre-preference transactions to see if

---

[1] In order to establish an ordinary course defense prior to adoption of the *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* ("BAPCPA"), creditors had to establish *both* that the transfer was made in the ordinary course of business and according to ordinary business terms. Under BAPCPA, creditors can prevail by showing *either* that the course of business *or* the business terms were ordinary. *Globe Mfg.*, 567 F.3d at 1298 n.4.

they were made in a similar manner. *Moltech Power*, 327 B.R. at 680. *See also In re Felt Mfg. Co.,* 2009 WL 3348300, at *6 (Bankr. D.N.H. Oct. 16, 2009)("the overall controlling consideration is whether the transactions between the debtor and the creditor both before and during the 90-day preference period were consistent"). At issue in this matter are the factors concerning timing of the Payment and the circumstances surrounding the Payment.

1.  *Lateness*

"[U]ntimely payments are more likely to be considered outside the ordinary course of business and avoidable as preferences." *Craig Oil,* 785 F.2d at 1567-68. Nevertheless, a "creditor may overcome the presumption that late payments are non-ordinary by showing that it was in the ordinary course of the parties' business to pay late." *Braniff, Inc. v. Sundstrand Data Control, Inc. (In re Braniff),* 154 B.R. 773, 780-81 (Bankr. M.D. Fla. 1993); *see also AMERI P.O.S.,* 355 B.R. at 885 (*citing Fred Hawes Org.,* 957 F.2d at 244) ("If paying late was ordinary for the parties then such payments are not preferences."); *CCG 1355, Inc.,* 276 B.R. at 383 ("late payments can be ordinary course if analysis finds them to be consistent, both before the preference period and during that period"). It is undisputed that the Debtor rarely paid the Defendant on time. However, the Trustee argues

9

that the Payment was made so late as to place it outside the Debtor's ordinary course of late payments to the Defendant.

In making their arguments, the Trustee and the Defendant used different methodologies to calculate a range, in numbers of days, for the timeliness of payments that was the ordinary course of the parties' business. The Trustee noted the date of the invoice and the date of the Debtor's check to show that 27 pre-preference payments were made in a range of between 34-50 days from the date of invoice. Using this approach, the Trustee asserts that the Payment is outside the range of pre-preference transactions since the Payment was made 59 days from the invoice date. The Trustee also calculated that JSL paid the Defendant's invoices on the average of 38.75 days after issuance of the corresponding invoices. In making this calculation, the Trustee omitted an invoice dated September 15, 2005, because the check for that invoice was returned for insufficient funds. Although the check was later redeposited, the Trustee maintained that the lapsed time between the invoice and ultimate payment could not be precisely calculated.

The Defendant used a different methodology to show that the Payment was consistent with the Debtor's other ordinarily late payments during the pre-preference period. Whereas the Trustee's calculations are based upon the invoice date and the check date, the Defendant's calculations are based upon the invoice date and

10

the date the check was delivered to, or received by, the Defendant.[2] In addition, The Defendant's calculations include the insufficient funds check that was omitted from the Trustee's calculations. As reflected on Defendant's Exhibit "A", a wire transfer payment was made on November 3, 2005 to cover the insufficient funds check.[3] The Defendant's calculations using the date of delivery indicate that pre-preference payments were between 0-33 days late.[4] The preference Payment was 29 days late. The Defendant calculated that on average all payments were 11.8 days late.

Thus, the Trustee maintains that the Payment, issued 59 days after the invoice date, was outside the pre-preference range of payments which were issued between 30 and 50 days from the date of invoice, while the Defendant shows that the Payment, delivered 29 days late, was within the pre-preference range of payments which were delivered between 0 and 33 days late. "Courts of Appeal to have considered the issue are unanimous in

---

[2] The Defendant date-stamped roughly half of the checks it received from the Debtor. For the remainder of the checks, the Defendant used the date of the check to calculate the range of timeliness of the Debtor's payments. To the extent that the Defendant's calculations used the check date rather than the date of receipt, the Defendant's analysis is skewed in favor of the Trustee. The Defendant's calculations are presented in a chart attached to Defendant's Motion as Exhibit "A". The Trustee stipulated that the contents of Exhibit "A" are correct.

[3] The Trustee's Motion states that the check was "redeposited", however the Trustee also stipulated to the accuracy of the contents of Defendant's Exhibit "A" which shows that a wire transfer was issued to cover the insufficient funds check.

[4] During the course of the parties' business relationship only two of thirty invoices issued by the Defendant were paid on time by the Debtor.

11

concluding that a 'date of delivery' rule should apply to check payments for purposes of § 547(c)." *Barnhill v. Johnson*, 503 U.S. 393, 402 n.9 (1992)(*citing Braniff Airways, Inc. v. Midwest Corp.*, 873 F.2d 805 (5th Cir. 1989); *In re Continental Commodities, Inc.*, 841 F.2d 527 (4th Cir. 1988); *In re Wolf & Vine*, 825 F.2d 197 (9th Cir. 1987); *In re Kenitra, Inc.*, 797 F.2d 790 (9th Cir. 1986); *In re White River Corp.*, 799 F.2d 631 (10th Cir. 1986); and *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35 (1st Cir. 1984)). Thus, the operative date for analyzing the Defendant's ordinary course defense is the date of delivery, not the date the check was issued. The Defendant also argues that the insufficient funds check should be included in determining the parties' ordinary course of business during the pre-preference period. The Court agrees. The date of delivery rule applies "so long as the check is honored upon its initial presentation to the bank." *Miller v. Florida Mining and Materials (In re A & W Assoc., Inc.,* 196 B.R. 900, 904 (Bankr. N.D. Fla. 1996). However, "[i]f the check is not honored upon its initial presentment, and subsequently resubmitted, the date of delivery no longer controls and the date of payment becomes the date the check is actually honored by the drawee bank." *Id.* Having reviewed each party's analysis, the Court finds that correct data for analyzing the Defendant's § 547(c)(2)(A) defense is set forth in Defendant's Exhibit "A", wherein the Defendant based its calculations on the

date of delivery of payment and included the returned check using the date it was honored.

"Courts have several mathematical tools at their disposal for establishing the ordinary course of business and comparing pre-preference transactions with preference transactions." *Moltech Power*, 327 B.R. at 681. Although there is no single formula the Court must use, most courts tend to use the range of terms that define the transaction, rather than considering only averages. *Id.* "To be in 'the ordinary course of business,' the [Payment] need not possess a rigid similarity to each past transaction. . . ; [the Defendant] need only 'demonstrate some consistency with other business transactions'". *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 96 B.R. 474, 476-77 (D.N.J. 1988). The Court finds that the Payment, which was 29 days late, is within the 0 to 33 day range of consistently late pre-preference payments made by the Debtor to the Defendant. *See Homes of Port Charlotte*, 109 B.R. at 491 (determining that only those preference payments beyond the pre-preference range of 28-76 days were outside the ordinary course). The Court does not find it necessary to reach the parties' arguments based on averages for differing sets of transactions. Even though the Payment is within the range of the Debtor's ordinary course of late payments to the Defendant, the circumstances surrounding the Payment take it outside the ordinary course of business.

2. *Unusual Collection Activity*

The Eleventh Circuit instructs:

> that § 547(c)(2) should protect those payments which do not result from 'unusual' debt collection or payment practices. To the extent an otherwise 'normal' payment occurs in response to such practices, it is without the scope of § 547(c)(2). Thus, whenever the bankruptcy court receives evidence of unusual collection efforts, it must consider whether the debtor's payment was in fact a response to those efforts.

*Craig Oil*, 785 F.2d at 1566.

The pivotal question is whether the Payment to the Defendant was made in response to unusual collection efforts. "As with the aging of payments, courts normally conduct a comparative analysis, looking at collection efforts in both the preference and pre-preference periods." *Felt Mfg.*, 2009 WL 3348300 at *8. The Defendant argues that an element of coercion, such as legal action, is required to render a payment not in the ordinary course of business based upon unusual collection activity. However, the analysis is performed case by case focusing on the particular circumstances that render collection activities unusual between the parties. *Id.* Threats of legal action are not prerequisites to finding that unusual collection activity is outside the ordinary course of business. "[A] creditor may alter the ordinary business terms by refusing to deliver new merchandise until the balance owed is reduced or completely omitted." *A & W Assoc.*, 196 B.R. at 906 (*citing Craig Oil,* 785 F.2d at 1566). *See e.g. Stober v. Florida Steel Corp. (In re*

14

*Industrial Supply Corp.*), 109 B.R. 484, 489 (Bankr. M.D. Fla. 1990) (determining payments were made as result of extraordinary collection efforts where Defendant refused to deliver new merchandise until the Debtor reduced the level of debt owed to the Defendant); *In re Braniff Inc.*, 154 B.R. at 782 (threats to stop all shipments was unusual collection activity).

It is undisputed that the Defendant was a diligent creditor. The Defendant would often inquire as to the status of payments and request prompt remittance when payments were late. In its Exhibit "B", the Defendant provided copies of numerous emails between the parties' accounting departments inquiring about the status of payments. On April 29, 2007, Mr. Stone sent an email to Mr. Lagae stating that the Defendant was placing the Debtor on "credit hold" until it received a response to its inquiry concerning outstanding invoices totaling approximately $112,000.00. Mr. Lagae states in his affidavit that he authorized the Payment as a result of being placed on credit hold by the Defendant, and that he did not recall any other instances of the Defendant having placed JSL on credit hold. Nevertheless, the Defendant argues that this was not unusual collection activity. In support of this argument, the Defendant points to a pre-preference October 11, 2006 email, sent by Mr. Stone to Mr. Lagae, which stated that to maintain a credit line with the Defendant and not be placed on prepaid credit status, checks for

15

outstanding invoices would have to arrive the following morning. In his affidavit, Mr. Stone characterizes both emails as similar "warnings". However, the Court finds that the emails are substantively different. The October 11, 2006 email might properly be characterized as a warning, whereas the April 29, 2007 email flatly states: "JSL is currently being placed on credit hold till we hear a response." Although the Defendant's office manager routinely sent emails inquiring about payments, the Defendant's Chief Financial Officer did not routinely send emails to the Debtor's President informing him that the Debtor had been placed on credit hold. The Court finds that the Payment was made in response to this unusual collection activity. The Defendant's additional argument that the April 29, 2007 email was sent during the pre-preference period has no bearing on the fact that the Payment was made during the preference period in response to unusual collection activity. Thus, the Defendant's unusual collection activity, evidenced by Mr. Stone's email, takes the Payment outside the protection of § 547(c)(2)(A).

### III. *Set Off & New Value*

Alternatively, the Defendant argues that if the Court finds the Payment is an avoidable preference, the Defendant is equitably entitled to set off for two remaining unpaid invoices totaling $33,563.80. The Defendant cites no statutory authority for such set off, and the two cases cited by the Defendant are

16

inapposite. *Capital Concepts Prop. 85-1 v. Mutual First Inc.,* 35 F.3d 170 (5th Cir. 1994) is unpersuasive because it is a receivership case under Texas law, not a bankruptcy case. While *Crews v. Cole (In re Bowden)* is a bankruptcy case, it does not involve preferential transfers. 186 B.R. 523 (Bankr. M.D. Fla. 1995).

The right of set off in bankruptcy is codified is 11 U.S.C. § 553. However, it is well settled that "a creditor may not defend against the receipt of otherwise voidable preferences by asserting the right of set-off under Section 68, but, to the contrary, must prove himself to be free of such." *Shaw v. Walter E. Heller & Co.,* 385 F.2d 353, 357 (5th cir. 1967)(construing section 68 of the Bankruptcy Act of 1898 which is the immediate predecessor to § 553 of the Bankruptcy Code).[5] "The law in this Circuit and elsewhere is that (except for a narrow but inapplicable exception) a creditor cannot set off his claims against his obligation to return preferences to the estate." *In re Chase & Sanborn Corp.,* 124 B.R. 371. 373-374 (Bankr. S.D. Fla. 1991). "The reasoning for this rule is that allowing the creditor to set off the amounts owed by the debtor against the preferential payments received would merely continue the preference and render the preference statute useless, because the preferences would not become available for pro rata distribution

---

[5] Decisions of the former Fifth Circuit are binding in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

17

to all creditors." *Id.* at 374 (*citing* 4 *Collier on Bankruptcy,* ¶553.09, at 553-49-50 (15th Ed. 1990)).

Notwithstanding, the Bankruptcy Code does protect transfers from avoidance to the extent that a creditor provides new value to the debtor as contemplated under § 547(c)(4). The § 547(c)(4) new value defense requires: 1) that the creditor must have extended the new value *after* receiving the challenged payments, 2) that the new value must have been unsecured, and 3) that the new value must remain unpaid. *In re Braniff*, 154 B.R. at 783 (emphasis added). The two unpaid invoices for which the Defendant seeks set off do not meet the Eleventh Circuit's requirements for § 547(c)(4) "new value", because this credit was extended *before* the Debtor made the challenged preference Payment. The Court concludes that there is no basis upon which to set off the amount due by the Defendant to the Debtor's estate.

### IV.  *Prejudgment Interest*

Finally, in addition to turnover of the Payment, the Trustee's Complaint seeks prejudgment interest from the date of the Trustee's demand for payment. Courts have discretion to award prejudgment interest as a matter of federal common law. *Globe Mfg.,* 567 F.3d at 1300 (choosing not to adopt the Seventh Circuit's inflexible rule requiring prejudgment interest in ordinary preference actions). In addition, "[a]n award of prejudgment interest must be equitable." *Id.* (*citing Osterneck v.*

18

*E.T. Barwick Indus., Inc.,* 825 F.2d 1521, 1536 (11th Cir.1987)). Although the Court's ruling in this matter favors the Trustee, the Defendant presented a colorable, if ultimately unpersuasive, ordinary course of business defense. The Court also notes that there has been no evidence that the Defendant in any way delayed these proceedings. Accordingly, the Court declines to exercise its discretion to award prejudgment interest.

## CONCLUSION

For the foregoing reasons, the Court finds that the preference Payment is subject to avoidance by the Trustee pursuant to § 547(b). Although the Payment was in the range of the Debtor's ordinary course of late payments to the Defendant, the asserted § 547(c)(2)(A) defense fails based upon the Defendant's unusual collection activity. The preference Payment is also not subject to set off.

## ORDER

The Court, having reviewed the submissions of the parties, the stipulated facts, the applicable law, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The Trustee's Motion is **GRANTED** in part. The Payment in the amount of $79,343.35 is avoided as a preferential transfer pursuant to 11 U.S.C. § 547(b). The Defendant shall turnover said amount to the Trustee within ten days of entry of this order. The Trustee's Motion is **DENIED** to the extent that it seeks prejudgment interest.

2. The Defendant's Motion is **DENIED**.

3. Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.

# # #

Copies furnished to:
Michael Bakst, Esq.
Jeffrey Snyder, Esq.

Attorney Bakst is directed to serve a copy of this order on any interested parties not listed above.