Tagged



**ORDERED in the Southern District of Florida on March 01, 2010.**

                                              Paul G. Hyman, Chief Judge
                                              United States Bankruptcy Court

```
            UNITED STATES BANKRUPTCY COURT
              SOUTHERN DISTRICT OF FLORIDA
                WEST PALM BEACH DIVISION
```

In re:
                                              Chapter 7 Case
JSL Chemical Corp.,                           Case No. 07-16145-BKC-PGH

     Debtor.                  /

Deborah C. Menotte, Trustee

     Plaintiff,                              Adv. Pro.09-1615-PGH

v.

Oxyde Chemicals, Inc.

     Defendant.                /

<u>ORDER DENYING OXYDE CHEMICALS, INC.'S MOTION FOR REHEARING AND CLARIFYING MEMORANDUM ORDER: 1) GRANTING IN PART TRUSTEE'S MOTION FOR SUMMARY JUDGMENT; AND 2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

**This matter** came before the Court upon Oxyde Chemicals, Inc.'s ("Oxyde") *Motion for Rehearing/New Trial* (the "Rehearing Motion"), wherein Oxyde seeks reconsideration of the Court's *Memorandum Order: 1) Granting in Part Trustee's Motion for*

*Summary Judgment; and 2) Denying Defendant's Motion for Summary Judgment* (the "Order").

Federal Rule of Civil Procedure 59(e), made applicable to bankruptcy proceedings by Bankruptcy Rule 9023, allows bankruptcy courts to reconsider orders and judgments after their entry. A motion to alter or amend an order or judgment shall be filed no later than 14 days after entry of that order or judgment. *See* Bankr. R. 9023. The Rehearing Motion was timely filed, and thus the Court has jurisdiction to review it. Under Federal Rule of Civil Procedure 59(e), a court may grant a motion to alter or amend an order or judgment if the movant presents: (1) newly discovered evidence that was not available at the time of trial, or (2) evidence in the record that clearly establishes manifest error of law or fact. *See In re Prince*, 85 F.3d 314 (7th Cir. 1996); *In re Investors Fla. Aggressive Growth Fund, Ltd.*, 168 B.R. 760 (Bankr. N.D. Fla. 1994).

Oxyde maintains that the Court made an error of law. The Rehearing Motion argues that the Court's finding that Oxyde engaged in unusual collection activity was erroneous because the Court: 1) failed to apply the current version of 11 U.S.C. § 547(c)(2); 2) did not consider applicable industry standards as mandated by the Eleventh Circuit; and 3) failed to allow Oxyde any discretion in its collection practices despite the tenure of Oxyde and JSL's ongoing business relationship. Rehearing Motion

¶12. The Rehearing Motion further states that "[i]ndeed, all the cases cited in the Court's opinion, even the latest 2009 cases, were all decided under the earlier version of the statute."

1.   *The Order applied the current version of § 547(c)(2)*

The current version of 11 U.S.C. § 547(c)(2), as amended by BAPCPA, became effective on October 17, 2005. The petition commencing the above-referenced Chapter 7 case was filed on August 2, 2007. The transfer at issue in this matter was made by check dated May 10, 2007 in payment of an invoice dated March 13, 2007. The Court admittedly did not include the full language of the statute in the Order, however, the Court is mystified that counsel could have reasonably concluded that the Court applied the pre-BAPCPA version of the statute in arriving at its decision. Nevertheless, to be clear, the Court's decision rested on the current version of 11 U.S.C. § 547(2)(c) which states:

> (c) The trustee may not avoid under this section a transfer–
>      (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>           (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>           (B) made according to ordinary business terms;

11 U.S.C. 547(c)(2).

The prior version of 11 U.S.C. § 547(2)(c), which the Court did not apply, provides:

3

>    (c) The trustee may not avoid under this section a transfer
>
>>    (2) to the extent that such transfer was--
>>       (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>>
>>       (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>>
>>       (C) made according to ordinary business terms;

11 U.S.C. § 547(c)(2)(1994 prior version).

The *only* substantive difference between the current version and the prior version of § 547(c)(2) is that the current version is stated in the disjunctive, while the prior version was stated in the conjunctive. Thus, the statute makes the "ordinary course of business" defense and the "ordinary business terms" defense alternative defenses rather than conjunctive defenses. 5-547 COLLIER ON BANKRUPTCY ¶ 547.04[2][a][i]. As a point of interest, the Order highlighted this difference in a footnote which stated:

> In order to establish an ordinary course defense prior to adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), creditors had to establish *both* that the transfer was made in the ordinary course of business and according to ordinary business terms. Under BAPCPA, creditors can prevail by showing *either* that the course of business or the business terms were ordinary. *Globe Mfg.*, 567 F.3d at 1298 n.4.

Under the prior version of § 547(c)(2), a successful defendant had to prove both elements. To prevail under the current version, a defendant need only prove the subjective

4

prong, i.e., the transfer was made in the ordinary course of business between the debtor and the transferee, *or* the objective prong, i.e., that the transfer was made according to ordinary business terms.

### 2. *Pre-BAPCPA preference cases remain good law*

The Rehearing Motion argues that the Court inappropriately relied on cases construing the prior version of the statute.[1] Again, to be clear, the cases cited in the Order remain good precedent to the extent that they independently interpret each element of the statute. *See* 5-547 COLLIER ON BANKRUPTCY ¶ 547.04[2]("These cases survive the enactment of the 2005 amendments, since the language of each prong of the defense remains unchanged."). The well developed body of case law interpreting the contours of each element is not to be discarded because the statute is now stated in the disjunctive. However, to the extent the cases hold that a creditor must prove both the subjective and the objective elements of § 547(c)(2) conjunctively, they can not be relied upon.

### 3. *Unusual collection activity asks whether activity is unusual between the parties, not whether it is unusual according to industry standards*

The Rehearing Motion maintains that the Court erred by not considering industry standards to determine what constitutes "unusual collection activity." *Craig Oil*, which remains good law,

---

[1] The Court notes that having attached importance to this observation, counsel failed to cite a single case that applied the current version of the statute.

instructs that "whenever the bankruptcy court receives evidence of unusual collection efforts, it must consider whether the debtor's payment was in fact a response to those efforts." *In re Craig Oil*, 785 F. 2d 1563, 1566 (11th Cir. 1986). "Courts have not articulated what types of collection efforts suffice, only that the efforts be <u>*unusual between the parties*</u>." *In re Felt*, 2009 WL 3348300 at *8 (Bankr. D.N.H. Oct. 16, 2009)(emphasis added). "As with the aging of payments, courts normally conduct a comparative analysis, looking at collection efforts in both the preference and pre-preference periods, to determine if the preference period collection efforts significantly deviate from the ordinary course between the parties." *Id.* Thus, courts analyzing whether a payment was made in response to unusual collection activity examine whether the collection activity was unusual based upon the course of business between the parties during the pre-preference period, not whether the collection efforts were unusual within the industry. *See e.g.*, *In re L. Bee Furniture Co., Inc.*, 204 B.R. 809 (Bankr. M.D. Fla. 1997) (determining without reference to industry standards that creditor picking up payment at debtor's place of business was not unusual collection activity as between the parties); *In re Industrial Supply Corp.*, 109 B.R. 484 (Bankr. M.D. Fla. 1990) (determining without reference to industry standards that payment was made in response to unusual collection activity where

creditor refused to deliver new merchandise); *Stober v. Florida Steel Corp. (In re Industrial Supply Corp.)*, 109 B.R. 484, 489 (Bankr. M.D. Fla. 1990) (determining without reference to industry standards that payments were made as result of extraordinary collection efforts where Defendant refused to deliver new merchandise until the Debtor reduced the level of debt owed to the Defendant).

Counsel argues that the Eleventh Circuit modified *In re Craig Oil* in *In re A.W. & Assoc., Inc.,* 136 F.3d 1439 (11th Cir. 1998), where it held that § 547(c)(2) requires courts to examine industry standards. Counsel's conclusion that the holding in *A.W. & Assoc.* modified *Craig Oil's* directives with respect to unusual collection activity is simply incorrect. *A.W. & Assoc*. does not direct courts to consider industry standards when determining if a payment was made in response to unusual collection activities. *A.W. & Assoc.* reversed the lower court because it had not considered the objective element of the statute which, at the time, was stated in the conjunctive.[2] In *A.W. & Assoc.,* the Eleventh Circuit noted:

> The other circuits that have considered the issue uniformly agree that the language of subsection (c)(2)(C) requires bankruptcy courts to consult industry standards in classifying a disputed transfer. . . . These cases emphasize that an interpretation of § 547(c)(2)(C) which focuses

---

[2]In *A.W. & Assoc.,* the Eleventh Circuit found no error in the lower court's analysis of the course of business between the parties under the subjective element of the statute.

7

> exclusively on the relationship between the creditor and the debtor would deprive subsection (c)(2)(C) of any independent meaning because subsection (c)(2)(B) already requires that the payment be evaluated in the context of the ongoing relationship between the debtor and the creditor.

*Id.* at 1443 (citations omitted). Section 547(c)(2)(C) referenced above, which is now § 547(c)(2)(B), requires that a transfer be made "according to ordinary business terms." The *A.W. & Assoc.* opinion noted that "'ordinary business terms' refers to the range of terms that encompass the practices in which firms similar in some general way to the creditor in question engage". *Id.* Stated another way, "ordinary business terms" concern industry standards. In *A.W. & Assoc.,* the Eleventh Circuit adopted the majority view which required consideration of industry standards *as well as* consideration of the ordinary course of business between the parties. Significantly, the majority at that time was construing the *prior version* of § 547(c)(2), i.e, the version that required proof of *both* the subjective and objective elements of the statute. *Id.*

Counsel's argument - that the Court erred by not considering industry standards to determine what constitutes unusual collection activity - impermissibly mixes the subjective and objective prongs of the statute. The objective prong, § 547(c)(2)(B), examines whether the transfer was made according to ordinary business terms as determined by industry standards. Section 547(2)(c)(A), the subjective prong, requires a showing

8

that the transfer was "made in the ordinary course of business or financial affairs of the debtor and the transferee". It "focuses on the parties relationship with each other." *In re Felt Mfg. Co., Inc.*, 2009 WL 3348300 at *6 (Bankr. D.N.H. Oct. 16, 2009). The Court applied the correct standard in determining that the transfer was made in response to unusual collection activity between the parties. Counsel's argument that unusual collection activity must be determined with reference to industry standards is unsupported by the law and is without merit.

**4.    *Discretion to Depart from Industry Standards is Irrelevant***

The Rehearing Motion also cites *In re Leaseco*, 389 F.2d 1205 (11th Cir. 2004) and *In re Molded Acoustical Prod., Inc.*, 18 F.2d 217 (3d Cir. 1994) to argue that even though Oxyde did not depart from industry standards in using a "credit hold", had it done so, the Court's failure to afford discretion to Oxyde to depart form industry standards was in error. Oxyde argues that based upon the parties' ongoing business relationship, Oxyde should have been allowed broad discretion to depart substantially from the range of terms established under an objective standard. This argument misses the mark. While the cases cited state a basis for allowing a departure from industry standards, they do so with respect to the objective standard where courts analyze "ordinary business terms" as set forth in what is now § 547(c)(2)(B). The Court's Order is based upon what is now § 547(2)(c)(A), the subjective

9

standard that analyzes the *ordinary course of business as between the parties*.

### 5. *Oxyde failed to meet its burden*

The Trustee and Oxyde each filed motions for summary judgment in this adversary proceeding. The Court set a schedule of deadlines for the parties to file responses and replies to each others motions. The Court ruled in favor of the Trustee based upon § 547(c)(2)(A), the subjective prong argued by the parties in their respective Motions, Responses, and Replies.

The Rehearing Motion states that Oxyde raised the objective standard at paragraph 19 of its Answer and as part of its Motion for Summary Judgment at paragraph 18. Paragraph 19 of Oxyde's Answer under the heading of "Affirmative Defenses" states:

> To the extent the Plaintiff carries the burden to prove an avoidable transfer pursuant to 11 U.S.C. § 547(b), Oxyde states that such transfer was in payment of a debt incurred by the Plaintiff in the ordinary course of business of the Plaintiff and Oxyde, that it was made in the ordinary course of business of the Plaintiff and Oxyde, and that it was made in accordance with ordinary business terms.

Paragraph 18 of Oxyde's Motion for Summary Judgment states:

> Just as JSL's indebtedness to Oxyde incurred in the ordinary course of business, payment for that debt occurred in the ordinary course of business. The second prong of the ordinary course of business defense is whether the payment was made i) in the ordinary course of affairs between the parties, or ii) according to ordinary business terms. *Kapila*, 355 B.R. at 883. Thus, while analysis of whether the debt was incurred in the ordinary course of business examines the

10

> typicality of the debt, determination of whether payment was in the ordinary course of business looks at the facts and circumstances surrounding the disputed payment.

While paragraph 19 of Oxyde's' Motion for Summary Judgment sets forth a statement of the alternative elements of an ordinary course of business defense, it does not assert § 547(c)(2)(B)'s objective standard as a defense. Nowhere does Oxyde's Motion for Summary Judgment defend the transfer as having been "made according to ordinary business terms" under § 547(c)(2)(B), the objective standard that implicates industry norms. Indeed, throughout the 37 pages of Oxyde's Motion for Summary Judgment, Response, and Reply, there is not one mention of industry standards, or any statement of what the ordinary business terms are in the chemical trading business. Oxyde failed to raise *any* argument that the transfer was not subject to avoidance because it was made in accordance with ordinary business terms pursuant to § 547(c)(2)(B). Oxyde also failed to submit *any* evidence that the transfer was not subject to avoidance because it was made in accordance with ordinary business terms in its industry, despite Oxyde having filed over 250 pages of exhibits purporting to show that the transfer was in the ordinary course of business as between the parties. The *only* arguments and evidence presented throughout Oxyde's papers related to the relationship and transactions between JSL and Oxyde, and Oxyde's argument that it was entitled to setoff if the Court determined that the transfer

11

was not in the ordinary course of business between the parties. To the extent, that the Rehearing Motion can be understood to claim that Oxyde raised the § 547(c)(2)(B) defense in its Motion for Summary Judgment, Oxyde failed to meet its burden.

Oxyde also failed its burden with respect to the Trustee's Motion for Summary Judgment. "A creditor who asserts the ordinary course of business defense has the burden of showing each of the . . . elements of 11 U.S.C. § 547(c)(2)." *In re Forex Fidelity Intern.*, 222 Fed. Appx. 806, 809 (11th Cir. 2007). "On a summary judgment motion, if the non-moving party bears the burden of proof on an issue at trial, the moving party simply may point to the absence of evidence to support the nonmoving party's case." *In re National Lumber & Supply, Inc.*, 184 B.R. 74,79 (9th B.A.P. 1995). Although Trustee's Motion for Summary Judgment primarily argued that the transfer was not in the ordinary course of business under the subjective standard, it squarely addressed the objective standard. Note 1 of Trustee's Motion for Summary Judgment pointed to the absence of evidence to support a defense under the objective prong of the statute:

> With respect to the objective prong of whether payments were made "according to ordinary business terms[,]" a payment is "according to ordinary business terms" if the payment practices at issue comport with the standard in the industry. *Miller v. Florida Mining and Materials (In re A.W. & Assoc., Inc.),* 136 F.3d 1439, 1442-43 (11th Cir. 1998). This excludes actual dealings between the parties. *Gulf City Seafoods, Inc. v. Ludwig Shrimp Co. (In Re Gulf City Seafoods, Inc.),* 296 F.3d 363, 368 at n.5 (5th Cir. 2002). A creditor cannot

12

> meet its burden by simply showing that 1) its arrangement with this debtor is similar to other credit arrangements it has with other debtors, or 2) the arrangement is similar to the debtor's arrangements with other creditors. *Id.* It is the burden of the creditor that received a preference to offer evidence that the payment was within the ordinary course of business in the relevant industry, and to this end must provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product. *Id.* at 369. Failure to provide such evidence requires that the defense fails as a matter of law. *Id.* Oxyde failed to set forth any such facts in discovery requesting such served by the Trustee, or to take any steps to discover or disclose such. Oxyde's Response to Interrogatory No.3.

Trustee's Motion for Summary Judgment at n.1 (D.E. #22).

Oxyde's Response to the Trustee's Motion for Summary Judgment did not respond to this point in any way. In order to avoid summary judgment, it was incumbent upon Oxide to come forth with evidence to show that a genuine issue of material fact existed. *See National Lumber*, 184 B.R. at 79. Oxyde failed to do so. Oxyde's attempt to now provide evidence of industry standards by attaching affidavits to its Rehearing Motion is untimely.[3] It is not newly discovered evidence that was unavailable at the time of trial as contemplated by Rule 59(e).

---

[3] The Rehearing Motion includes affidavits and exhibits purporting to show that placing an account on "credit hold" is not unusual collection activity in either the industry or between Oxyde and its other customers.

## CONCLUSION

The Court used the correct legal standard to determine that Oxyde's § 547(c)(2)(A) defense failed based upon the transfer having been made in response to Oxyde's unusual collection activity as between the parties.

## ORDER

The Court, having reviewed the Rehearing Motion, the applicable law, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that Oxyde's Rehearing Motion is **DENIED**.

# # #

Copies furnished to:
Michael Bakst, Esq.
Robert C. Meyer, Esq.